## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOSEPH SPANO, individually
and on behalf of all others
similarly-situated,

      Plaintiff,

v.                                Case No.:

BLUETRITON BRANDS, INC.,
d/b/a NESTLE WATERS NORTH
AMERICA, A Foreign Profit Corporation,

      Defendant.

_____/

## CLASS ACTION COMPLAINT

      Plaintiff, Joseph Spano, by and through the undersigned counsel, hereby files this Class Action Complaint against Bluetriton Brands, Inc., d/b/a Nestle Waters North America ("Nestle" or "Defendant"), alleging that Defendant failed to provide him and the putative class members whom he seeks to represent with a COBRA compliant notice of their right to continue their health insurance benefits following a qualifying event. In further support thereof, Plaintiff states the following:

## BRIEF OVERVIEW

      1.    Defendant, the plan sponsor and plan administrator of the Group Health and Welfare Plan ("Plan"), has flagrantly and repeatedly violated ERISA by failing to provide participants and beneficiaries in the Plan with adequate notice of their right to continue their health insurance coverage following an occurrence of a

COBRA "qualifying event."

2.      COBRA is a remedial statute intended to protect individuals, and as such must always be construed in favor of plan participants and beneficiaries.

3.      Congress enacted COBRA in 1986 as a result of the growing number of Americans without any health insurance coverage and the reluctance of medical providers to provide care to those without the means to pay – typically the uninsured.

4.      COBRA's notice requirements were created to simplify the delivery of information to COBRA eligible individuals and to assist individuals in making informed decisions regarding the continuation of benefits after a qualifying event.

5.      COBRA was intended to encourage the continuation of benefits following a qualifying event.

6.      Defendant's COBRA notice had the opposite effect –it discouraged individuals from electing continuation coverage.

7.      Defendant deliberately used a COBRA notice intended to discourage plan participants from electing COBRA continuation coverage to minimize its exposure to expensive claims, as the people that typically elect COBRA continuation coverage are more expensive to insure because of age or existing health conditions.

8.      Defendant's COBRA notice is not "written in a manner calculated to be understood by the average plan participant" because it creates an artificial fear of criminal prosecution or civil liability.  Specifically, it contains an ominous warning suggesting the submission of "incomplete" information when electing COBRA may

result in criminal or civil penalties.  Specifically, it reads:

> **You certify that all information is complete and accurate to the best of your knowledge.  Please note that any person who knowingly provides false, incomplete, or misleading information is considered to have committed an act to defraud or deceive the Plan Sponsor(s). The filing of any application for insurance or other claim for benefits based on false, misleading, or incomplete information is a fraudulent act and may result in criminal or civil penalties**.

9.     This patently false certification requirement is purposefully placed directly above the signature line of the Defendant's COBRA enrollment "certification" form.

10.    This so-called "warning" contains inaccurate and misleading information.

11.    The election form also contains an unnecessary warning of a possible "$50 penalty from the IRS for each failure to provide an accurate tax identification number for a covered individual."

12.    The above language is inserted into Defendant's COBRA notice without context or explanation why individuals might be criminally prosecuted or face IRS penalties for electing to continue health insurance benefits.

13.    A COBRA notice containing threats of criminal penalties and IRS fines, defeats the remedial purpose of the statute that was enacted by Congress to encourage informed decision making.

14.    Adding threatening language to COBRA notices deters people, including Plaintiff, from electing continuation coverage.

15.    Adding threatening language violates 29 C.F.R. § 2590.606–4(b)(4)'s

requirement that notices be written in a manner calculated to be understood by the average plan participant.

16.     Pursuant to ERISA, notices that are drafted in a manner calculated to be understood by the average plan participant "will usually require the limitation or elimination of technical jargon and of long, complex sentences, the use of clarifying examples and illustrations, the use of clear cross references and a table of contents." 29 C.F.R. § 2520.102-2 (governing style and format of summary plan description).

17.     Defendant's COBRA notice, which contains threats of criminal penalties and IRS fines, does not satisfy the standard because Defendant fails to provide a single clarifying example and/or illustration demonstrating how or why plan participants risk criminal penalties and/or IRS fines by submitting incomplete information.  For instance, there are no examples or illustrations of what constitutes "false, misleading or incomplete" information.

18.     Defendant purposefully omitted the requisite elements of "knowledge" or "intent" from its definition of fraud.  By omitting the requisite elements of "knowledge" or "intent" from its definition of "fraud" when filing an application to continue benefits, Defendant misstates the legal definition of fraud.

19.     Pursuant to Defendant's COBRA notice neither intent nor knowledge is required to commit a crime or fraud when electing COBRA continuation coverage.

20.     Thus, Defendant discourages participation by warning recipients of potential criminal and civil liability for a crime or civil wrong that simply doesn't exist – filing an incomplete application for insurance without knowledge or intent to

mislead or conceal.

21. Defendant's self-serving [and much lower] standard for ERISA fraud is a far cry from the heightened level of "knowledge" required to violate any purported ERISA fraud statute, including 18 U.S.C. § 1027.

22. ERISA fraud as defined by 18 U.S.C. 1027 requires intent. Defendant chills participation by implying the possibility of criminal or civil prosecution for inadvertent errors of omission or honest mistakes.

23. Plaintiff's decision not to enroll in continuation coverage was made in part because of the threatening language in the COBRA form.

24. Plaintiff's loss of health coverage is attributable to the chilling language contained in Defendant's COBRA notice.

25. Plaintiff lost his health, vision and dental insurance coverage because the idle threats contained in the COBRA notice discouraged Plaintiff from electing COBRA continuation coverage to continue his medical, dental, and vision insurance.

26. Defendant's COBRA Notice violates 29 C.F.R. § 2590.606–4(b)(4)(i) because it does not identify the Plan Administrator. Instead, it merely identifies the COBRA Administrator, BenefitConnect.

27. Providing only the COBRA administrator's name does not satisfy the election notice requirements of § 2590.606-4(b)(4)(i), which requires identifying the Plan Administrator's and providing its name, address, and telephone number. Therefore, notice is not "sufficient to permit the discharged employee to make an

informed decision whether to elect coverage."

28.     Plaintiff and the putative class seek statutory penalties, injunctive relief, attorneys' fees, costs and expenses, and other appropriate relief as set forth herein and provided by law to remedy these violations, which threaten Class Members' ability to continue their benefits after a qualifying event.

## JURISDICTION AND VENUE

29.     Venue is proper in the United States District Court for the Middle District of Florida because the events giving rise to these claims arose in this district.

30.     Plaintiff, a Florida resident, resides in this district and experienced a qualifying event within the meaning of 29 U.S.C. § 1163(2) within this District.

31.     Defendant does business in the state of Florida and in this District.

## SUPPORTING LAW AND FACTUAL ALLEGATIONS

### COBRA Notice Requirements

32.     The COBRA amendments to ERISA included certain provisions relating to continuation of health coverage upon termination of employment or other "qualifying event" as defined by the statute.

33.     COBRA requires the plan sponsor of each group health plan normally employing more than twenty (20) employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event … to elect, within the election period, continuation coverage under the plan."  29 U.S.C. § 1161.  (Emphasis added).

34.    Clear and unencumbered notice is critical to disclosing continuation coverage rights.  The COBRA notification requirement exists because employees are not presumed to know they have a federally protected right to continue healthcare coverage subsequent to a qualifying event.

35.    COBRA further requires the administrator of such a group health plan provide notice to any qualified beneficiary of their continuation of coverage rights under COBRA upon the occurrence of a qualifying event. 29 U.S.C. § 1166(a)(4). This notice must be "[i]n accordance with the regulations prescribed by the Secretary" of Labor.  29 U.S.C. § 1166(a).

36.    The relevant regulations prescribed by the Secretary of Labor concerning notice of continuation of coverage rights are set forth in 29 C.F.R. § 2590.606-4 as follows:

> (4) The notice required by this paragraph (b) shall be written in a manner calculated to be understood by the average plan participant and shall contain the following information:
>
>> (i) The name of the plan under which continuation coverage is available; and the name, address and telephone number of the party responsible  under the plan for the administration of continuation coverage benefits;
>>
>> (ii) Identification of the qualifying event;
>>
>> (iii) Identification, by status or name, of the qualified beneficiaries who are recognized by the plan as being entitled to elect continuation coverage with respect to the qualifying event, and the date on which coverage under the plan will terminate (or has terminated) unless continuation coverage is elected;
>>
>> (iv) A statement that each individual who is a qualified beneficiary with respect to the qualifying event has an independent right to elect continuation coverage, that a

covered employee or a qualified beneficiary who is the spouse of the covered employee (or was the spouse of the covered employee on the day before the qualifying event occurred) may elect continuation coverage on behalf of all other qualified beneficiaries with respect to the qualifying event, and that a parent or legal guardian may elect continuation coverage on behalf of a minor child;

(v) An explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made;

(vi) An explanation of the consequences of failing to elect or waiving continuation coverage, including an explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act, with a reference to where a qualified beneficiary may obtain additional information about such rights; and a description of the plan's procedures for revoking a waiver of the right to continuation coverage before the date by which the election must be made;

(vii) A description of the continuation coverage that will be made available under the plan, if elected, including the date on which such coverage will commence, either by providing a description of the coverage or by reference to the plan's summary plan description;

(viii) An explanation of the maximum period for which continuation coverage will be available under the plan, if elected; an explanation of the continuation coverage termination date; and an explanation of any events that might cause continuation coverage to be terminated earlier than the end of the maximum period;

(ix) A description of the circumstances (if any) under which the maximum period of continuation coverage may be extended due either to the occurrence of a second qualifying event or a determination by the Social Security Administration, under title II or XVI of the Social Security Act (42 U.S.C. 401 et seq. or 1381 et seq.) (SSA), that the qualified  beneficiary is disabled, and the length of any such extension;

(x) In the case of a notice that offers continuation coverage with a maximum duration of less than 36 months, a description of the plan's requirements regarding the responsibility of qualified beneficiaries to provide notice of a second qualifying event and notice of a disability determination under the SSA, along with a description of the plan's procedures for providing such notices, including the times within which such notices must be provided and the consequences of failing to provide such notices. The notice shall also explain the responsibility of qualified beneficiaries to provide notice that a disabled qualified beneficiary has subsequently been determined to no longer be disabled;

(xi) A description of the amount, if any, that each qualified beneficiary will be required to pay for continuation coverage;

(xii) A description of the due dates for payments, the qualified beneficiaries' right to pay on a monthly basis, the grace periods for payment, the address to which payments should be sent, and the consequences of delayed payment and non-payment;

(xiii) An explanation of the importance of keeping the administrator informed of the current addresses of all participants or beneficiaries under the plan who are or may become qualified beneficiaries; and

(xiv) A statement that the notice does not fully describe continuation coverage or other rights under the plan, and that more complete information regarding such rights is available in the plan's summary plan description or from the plan administrator.

37.    To ensure employees and their spouses are provided clear and effective notice, the United States Department of Labor ("DOL") has issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4.  The DOL website states that the DOL "will consider use of the model election notice, appropriately completed, good faith compliance with the election notice content requirements of COBRA."

38.    In the event that a plan administrator declines to use the Model Notice

and fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, the administrator is subject to statutory penalties of up to $110.00 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1).

39.    Additionally, the Court may order such other relief as it deems proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1).

40.    Defendant could have used the Model Notice but deliberately chose to create its own notice, presumably to deter qualified employees from electing continuation coverage.

41.    Defendant failed to use the Model Notice and failed to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, as set forth below.

### *Defendant's Notice Is Inadequate and Fails to Comply with COBRA*

42.    Defendant did not use the Model Notice to notify plan participants of their right to continuation coverage even though it contains all the required information and provides a "safe harbor."  The Model Notice illustrates COBRA notice can be written in a manner calculated to be understood by the average plan participant and provides an easy way for people to sign up for continuing coverage of their existing benefits.

43.    Defendant deliberately authored and implemented a notice that omitted critical language contained in the Model Notice but included superfluous language intended to deter election of COBRA benefits.

44.    Defendant's deficient Notice has a chilling effect, discouraging participants from enrolling in continuation coverage.

45.    Defendant's Notice violates several key COBRA requirements, as explained below:

a.    The Notice violates 29 C.F.R. § 2590.606-4(b)(4) because it contains inaccurate and misleading threats of criminal penalties and fines intended to chill participation;

b.    The Notice violates 29 C.F.R. § 2590.606-4(b)(4)(i) because it fails to provide the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits; and, finally,

c.    The Notice was not "written in a manner calculated to be understood by the average plan participant."

46.    Defendant's COBRA Notice confused Plaintiff, preventing him from making an informed decision whether to elect COBRA continuation coverage.

47.    For instance, Defendant's COBRA Notice does not contain any clarifying examples or illustrations as to why or how a person electing to continue health insurance coverage is exposed to criminal prosecution or IRS fines.

48.    Additionally, Defendant's COBRA Notice fails to provide a single clarifying example or illustration of a submission that would expose a person electing to continue health insurance coverage to criminal prosecution or IRS fines.

49.    Defendant's COBRA Notice contains "technical jargon" and/or prohibited "complex sentences," including as to criminal and civil penalties, failing the statutory requirement that its COBRA Notice be "written in a manner calculated to be understood by the average plan participant."

11

50.    Defendant's COBRA Notice contains misstatements of law, which precludes it from being "written in a manner calculated to be understood by the average plan participant."  Specifically, threats of criminal and civil penalties are found on multiple pages of Defendant's Notice, including the "Certification" form and the "COBRA Election Form" (to which a signature must be affixed to continue coverage).

51.    Plaintiff did not elect to continue his health insurance coverage because he received the defective COBRA Notice, and therefore suffered a tangible injury in the form of economic loss, specifically the loss of health insurance coverage. Insurance coverage has monetary value, the loss of which is a tangible economic injury.

52.    Plaintiff suffered concrete harm in the form of stress and anxiety caused by the loss of health insurance and his inability to refill his prescription medication.

53.    Plaintiff did not enroll in the continuation coverages made available to him, including medical, dental, and vision based, in part, on the based on the misleading and inaccurate threats and warnings contained in Defendant's COBRA Notice.

54.    The loss of coverage was directly attributable to the chilling effect of the superfluous language contained in Defendant's COBRA notice.

55.    In fact, because of the exaggerated threats of criminal and civil liability contained in Defendant's COBRA notice, which contributed to Plaintiff's decision not to elect continuing coverage, Plaintiff lost his insurance coverages.

56.     Besides the injuries detailed above, Defendant's deficient COBRA Notice caused Plaintiff an informational injury when Defendant failed to provide him with information to which he was entitled by statute, namely a compliant COBRA election notice containing all information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a).

57.     By enacting COBRA, Congress created a right—the right to receive the required COBRA election notice—and an injury—not receiving a proper election notice with information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a). Defendant injured Plaintiff and the putative class members he seeks to represent by failing to provide them with the information required by law.

### Plaintiff's Experience

58.     Plaintiff worked for Defendant as a route driver from July, 2013 until July 2, 2019.

59.     Plaintiff and his family had health, life, vision and EAP benefits through Defendant's plans.

60.     Plaintiff was terminated on July 2, 2019. Plaintiff was not terminated for gross misconduct.

61.     Following Plaintiff's termination, Defendant caused its COBRA administrator, BenefitConnect, to mail Plaintiff the deficient COBRA notice.

62.     Plaintiff did not elect COBRA, in part, because he and his wife were concerned about potential liability if he supplied inaccurate information.

63.     Because Plaintiff did not elect COBRA, he was unable to refill his

13

prescription medication, which exacerbated the stress and anxiety of being unemployed and uninsured.

64.     Plaintiff was frustrated by the fact he did not have insurance and therefore could not refill his prescription medication.

65.     Plaintiff did not elect COBRA because Defendant's COBRA notice was not written in a manner calculated to be understood by the average plan participant.

66.     If Plaintiff had been presented with a COBRA notice that did not cause him to believe he could be criminally or civilly liable for making an honest mistake, Plaintiff would have elected COBRA and continued his coverages.

### *Plaintiff Was Not Required To Exhaust Administrative Remedies*

67.     Because this is not an ERISA benefits case, Plaintiff was not required to exhaust any administrative remedies through Defendant prior to bringing suit.

68.     Any attempts to exhaust the administrative remedies would have been futile as this is not an ERISA benefits case.  In fact, exhaustion of administrative remedies is not required because Plaintiff was not provided with proper notice of his rights in the first instance.

69.     Any attempts to exhaust administrative remedies would have been futile.  Defendant's Summary Plan Description contains no applicable procedures for exhausting administrative remedies for statutory COBRA notice claims.

70.     Defendant's Summary Plan Description contains no procedures for exhausting administrative remedies for failure to provide lawful COBRA notices, thus no exhaustion of remedies requirement was ever contemplated for Plaintiff's

claims.

71.    Any attempts to exhaust administrative remedies would have been futile because Defendant's Summary Plan Description only requires exhaustion of administrative remedies when plan participants are denied claims.  Plaintiff did not have a claim denied.  Rather, Plaintiff alleges Defendant failed to provide him with federally required lawful notice of his right to continue benefits after a qualifying event.

### *Article III Standing*

72.    Plaintiff and the putative class have Article III standing on the basis of economic injury – the loss of insurance.

73.    Plaintiff and the putative class have Article III standing as they suffered the downstream consequences of Defendant's COBRA violation, which bears a sufficiently close relationship to claims recognized under common law, including fraud and negligent misrepresentation, in that Defendant provided them with false or misleading information regarding their right to continue benefits.

74.    Plaintiff and the putative class have Article III standing as they suffered the downstream consequences of Defendant's COBRA violation, which bears a sufficiently close relationship to the common law right to information, as Plaintiff and the putative class had a special need and interest in receiving accurate information about their federally protected right to continue benefits.

75.    Plaintiff and the putative class have Article III standing as they suffered the downstream consequences of Defendant's COBRA violation – the stress,

frustration and anxiety of being uninsured.

### *Violation of 29 C.F.R. § 2590.606-4(b)(4)*
### *Defendant failed to provide notice written in a manner*
### *calculated "to be understood by the average plan participant"*

76.     Whether Defendant's COBRA Notice satisfies the statutory requirement hinges upon whether it is understandable by an average plan participant. This requirement has been interpreted as an objective standard rather than requiring an inquiry into the subjective perception of the individual plan participants.

77.     29 U.S.C. § 1166(a)(4)(A) requires plan administrators notify former employees of their right to receive continuation coverage with a notice sufficient to permit an "average person" to make an informed decision whether to elect continuing coverage.

78.     Defendant's COBRA Notice threatens criminal/civil prosecution, requiring people to certify an acknowledgement that "any person who knowingly provides materially false, incomplete, or misleading information is considered to have committed an act to defraud or deceive the Plan Sponsor.  The filing of any application for insurance or other claim for benefits based on false, misleading, or incomplete information is a fraudulent act and may result in criminal or civil penalties."

79.     There is no similar certification required in the DOL Model Notice or COBRA Continuation Coverage Election Form.

80.     Defendant's COBRA Election Form also warns of a possible "$50

penalty from the IRS for each failure to provide an accurate tax identification number for a covered individual." The DOL's Model COBRA Continuation Coverage Election Form contains no similar language.

81.    Defendant deliberately included threatening language to deter people from electing to continue their benefits.

82.    Defendant does not want people continuing their benefits following a qualifying event because the people that do are generally sicker and older – and as a result file more claims, and are more expensive to insure.

83.    Thus, when people elect to continue coverage, Defendant incurs higher risk and exposure to additional claims. Put differently, it is more costly for Defendant when former employees and their dependents elect to continue their coverages. Conversely, is less costly for Defendant when former employees and their dependents don't elect COBRA continuation coverage.

84.    It is in Defendant's best interest to deter former employees and their dependents from electing COBRA continuation coverage, as they are more costly to insure and are of no longer any value to Defendant, as they are no longer Defendant's employees.

85.    Defendant buries its "COBRA Election Form" in the middle of its voluminous "COBRA Election Notice Summary" to make it more difficult for the average plan participant to elect continuing coverage.

86.    Contributing to the confusion, Defendant inserted the misleading "certification" immediately after the election form and omitted any reference to it in

the instructions on how to enroll using the paper election form in its "COBRA Election Notice Summary."

87.     Defendant's "COBRA Election Notice Summary" contains no guidance on the import of the random "certification" form, including whether it is must be executed and submitted to enroll in COBRA.

88.     The DOL Model Notice and its COBRA Continuation Coverage election Form do not contain empty threats or force people to certify acknowledgement of possible criminal liability, civil liability or IRS penalties.

89.     In seven pages, the Model DOL COBRA Notice conveys the information a person needs to make an informed decision "in a manner calculated to be understood by the average plan participant."  Defendant's voluminous COBRA Notice is 17 pages and creates confusion by overloading the reader with superfluous information.  Therefore, it is not written "in a manner calculated to be understood by the average plan participant."

90.     Defendant's COBRA Notice does not sufficiently permit the average plan participant to make an informed decision whether to elect coverage.

*Violation of 29 C.F.R. § 2590.606-4(b)(4)(i)*
*Failure to Identify Plan Administrator*

91.     The COBRA notice provided to Plaintiff omitted important information identifying the party responsible under the Plan for administration of continuing coverage benefits.   Instead, the third-party administrator, BenefitConnect, is identified, but that is not what the statute requires.   Thus, Plaintiff was never

informed who administers the continuation coverage, which is the Defendant entity named here.

92.    Defendant was required to provide "in a manner calculated to be understood by the average plan participant ... the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits." 29 C.F.R. § 2590.606- 4(b)(4)(i).  Defendant's Notice failed to satisfy this fundamental requirement.

93.    Defendant's Notice only identifies a third-party administrator.  A third-party administrator is different from the Plan Administrator.

94.    Identifying the Plan Administrator is critical because the plan administrator bears the burden of proving that adequate COBRA notification was provided.  Identifying the Plan Administrator is particularly important when there are several related or affiliated entities that utilize different Plan Administrators.

## CLASS ACTION ALLEGATIONS

95.    Plaintiff brings this action as a class action pursuant to Rule 23 Fed.R.Civ.P. on behalf of the following persons:

> **All participants and beneficiaries in the Defendant's Health Plan who were provided the COBRA notice by Defendant, in the same form sent to Plaintiff, during the applicable statute of limitations period, as a result of a qualifying event, as determined by Defendant, who did not elect COBRA**.

96.    Because this is not an ERISA benefits case, no administrative remedies exist as a prerequisite to Plaintiff's claim on behalf of the Putative Class.  Any efforts related to exhausting such non-existent remedies would have been futile.

97.    <u>Numerosity</u>:    The Class is so numerous that joinder of all Class members is impracticable.    On information and belief, hundreds or thousands of individuals satisfy the definition of the Class.

98.    <u>Typicality</u>:    Plaintiff's claims are typical of the Class.    The COBRA notice that Defendant sent to Plaintiff was a form notice that was uniformly provided to all Class members.    As such, the COBRA notice that Plaintiff received was typical of the COBRA notices that other Class Members received and suffered from the same deficiencies.

99.    <u>Adequacy</u>:    Plaintiff will fairly and adequately protect the interests of the Class members; he has no interests antagonistic to the class, and he has retained counsel experienced in complex class action litigation.

100.    <u>Commonality</u>:    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

      a.    Whether the Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1);

      b.    Whether Defendant's COBRA notice complied with the requirements of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

      c.    Whether statutory penalties should be imposed against Defendant under 29 U.S.C. § 1132(c)(1) for failing to comply with COBRA notice requirements, and if so, in what amount;

      d.    The appropriateness and proper form of any injunctive relief or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3); and, finally,

      e.    Whether (and the extent to which) other relief should be

granted based on Defendant's failure to comply with COBRA notice requirements.

101. Class Members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class Member's individual claims is relatively small compared to the expense and burden of individual prosecution.

102. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices and the adequacy of its COBRA notice. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action.

103. Plaintiff intends to send notice to all Class Members. The names and addresses of the Class Members are available from Defendant's records, as well as from Defendant's third-party COBRA administrator.

## COUNT I
### Violation of 29 U.S.C. § 1166 and
### 29 C.F.R. § 2590.606-4, Enforced Through 29 U.S.C. § 1132

104. Plaintiff alleges and incorporates by reference the allegations set forth in Paragraphs 32-94.

105. The Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1).

106. Defendant is the sponsor and administrator of the Plan, and was subject to the continuation of coverage and notice requirements of COBRA.

107.   Plaintiff and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and Defendant was aware of the same.

108.   On account of such qualifying event, Defendant sent Plaintiff and the Class Members a COBRA notice.

109.   The COBRA notice that Defendant sent to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 for the reasons set forth above, for which Plaintiff brings this civil action under the authority found in 29 U.S.C. § 1132.

110.   These violations were material and willful.

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief as follows:

    a.    designating Plaintiff's counsel as counsel for the Class;

    b.    issuing proper notice to the Class at Defendant's expense;

    c.    declaring that the COBRA notice sent by Defendant to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

    d.    awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

    e.    awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110.00 per day for each Class Member who was sent a defective COBRA notice by Defendant;

    f.    awarding attorneys' fees, costs and expenses to Plaintiff's counsel as provided by 29 U.S.C. § 1132(g)(1) and other

applicable law; and

g.   granting such other and further relief, in law or equity, as this Court deems appropriate.

Dated this ____ day of April, 2022.

/s/ Marc R. Edelman
**MARC R. EDELMAN, ESQ.**
Florida Bar No. 0096342
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone:  813-223-5505
Fax:  813-257-0572
MEdelman@forthepeople.com
*Attorney for Plaintiff*